1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

MARK BASSAM and EVANGELINE
BASSAM,

              Plaintiffs,

             vs.

BANK OF AMERICA; BAC HOME
LOANS SERVICING LP; SPECIALIZED
LOAN SERVICING LLC; NATIONSTAR
MORTGAGE LLC; U.S. NATIONAL
BANK ASSN.; and DOES 1 through 20,
inclusive.

             Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

CASE NO. CV 15-00587 MMM (FFMx)

ORDER GRANTING MOTIONS OF
DEFENDANTS BANK OF AMERICA,
SPECIALIZED LOAN SERVICING LLC,
NATIONSTAR MORTGAGE LLC, AND U.S.
BANK NATIONAL ASSOCIATION'S TO
DISMISS

On December 3, 2014, Mark and Evangeline Bassam (collectively, "plaintiffs") filed this action against Specialized Loan Servicing LLC ("SLS"), Nationstar Mortgage LLC ("Nationstar"), U.S. Bank National Association ("U.S. Bank"), Bank of America, N.A. ("BofA"), and certain fictitious defendants in Los Angeles Superior Court.[1]  Defendants were served on December 27, 2014, and timely removed the action to federal court on January 26, 2015, invoking the court's diversity jurisdiction.[2]

On April 20, 2015, plaintiffs filed a first amended complaint.[3]  On May 4, 2015, SLS, Nationstar,

---

[1]Notice of Removal ("Removal"), Docket No. 1 (Jan. 26, 2015), Exh. B ("Complaint").

[2] Removal at 6.

[3]First Amended Complaint ("FAC"), Docket No. 20 (Apr. 20, 2015).

and U.S. Bank (collectively, "SLS Defendants") filed a motion to dismiss the first amended complaint.[4] The next day, BofA also filed a motion to dismiss the amended complaint.[5]  Plaintiffs have not opposed either motion.  Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the court finds the matters appropriate for decision without oral argument.  The hearing calendared for July 13, 2015, is therefore vacated, and the matters are taken off calendar.

# I.  FACTUAL BACKGROUND

### A.   Facts Alleged in the First Amended Complaint

#### 1.   Facts Concerning Defendants' Alleged Breach of Contract

Plaintiffs are allegedly the owners of real property located at 3615 Ponderosa Street, El Monte, California 91732 (the "Property").[6]  In early 2009, plaintiffs purportedly applied for a home loan modification through BofA.[7]  Plaintiffs contend that, while their application was under consideration, they were placed on a trial plan that called for them to make reduced payments on their loan.[8]  On May 11, 2010, plaintiffs allegedly received a document from BofA captioned "Home Affordable Modification Agreement" (the "Agreement").[9]  BofA purportedly instructed plaintiffs to review the document, make any necessary corrections, and sign and return it within one week.[10]  Plaintiffs assert they complied fully with BofA's instructions and returned the signed document prior to May 18, 2010.[11]

Shortly thereafter, plaintiffs allegedly began making loan payments in accordance with the terms

---

[4]Notice of Motion and Motion to Dismiss Case ("SLS MTD"), Docket No. 29 (May 4, 2015).

[5]Notice of Motion and Motion to Dismiss First Amended Complaint ("BofA MTD"), Docket No. 32 (May 5, 2015).

[6]FAC, ¶ 1.

[7]FAC, ¶ 6.

[8]*Id.*

[9]*Id.*

[10]*Id.*

[11]*Id.*

2

of the Agreement.[12]  BofA representatives, however, purportedly advised them that the loan modification had not been approved, and that plaintiffs had to make the payments required by the original loan or face default and foreclosure.[13]  Plaintiffs allege that they could not make the original payments and believed they would lose their home.[14]  As a result, they purportedly took steps to prepare for foreclosure and eviction; these included expenditures to renovate a trailer that would serve as their temporary living quarters.[15]

Plaintiffs allege that for approximately one year, they attempted to get clarification as to whether the loan modification had been approved, and, if it had been denied, the reasons for the denial.[16]  Each time, plaintiffs were purportedly informed that their loan modification application had been denied; a variety of reasons for the denial were offered.[17]  On several occasions, defendants' representatives purportedly told plaintiffs that "something was definitely wrong" and that they would refer the matter to the "escalation department" or to upper management for further investigation.[18]  Defendants' representatives never subsequently told plaintiffs whether the matter had been referred to management.[19]

The first written indication plaintiffs purportedly received that their loan had been modified was on March 9, 2011, when they received a copy of the Agreement via mail.[20]  This copy was purportedly

---

[12] *Id.*, ¶ 7.

[13] *Id.*

[14] *Id.*, ¶ 9.

[15] *Id.*

[16] *Id.*, ¶ 8.

[17] *Id.*

[18] *Id.*  Plaintiffs do not indicate whether the representatives with whom they purportedly spoke were employed by BofA or by any of the SLS Defendants; they simply refer broadly to "defendants."

[19] *Id.*

[20] *Id.*, ¶ 10.

3

executed by defendants on February 11, 2011.[21]  Plaintiffs assert that, due to defendants' representations that their loan modification application had not been approved, they did not know of the approval until March 9, 2011.[22]  Paragraph 2B of the Agreement purportedly provides that the Agreement is not effective unless and until plaintiffs receive a copy of the agreement signed by the lender.[23]

Following the receipt of the signed Agreement from defendants, plaintiffs purportedly made modified payments as required by the Agreement.[24]  Defendants purportedly refused to accept the modified payments, however.[25]  Defendants also allegedly overcharged plaintiffs $3,500.00 to $4,000.00 for insurance, despite the fact that plaintiffs purportedly supplied proof of insurance.[26]

### 2.    Facts Concerning Defendants' Purportedly Outrageous Conduct

Plaintiffs allege that, from February 11, 2011 to the present, they have suffered emotional distress as a result of SLS's and Nationstar's denial of the fact that their loan had been modified.[27]  They have also purportedly suffered emotional distress as a result of the fact that SLS, Nationstar, BofA, and U.S. Bank have allegedly refused to credit certain payments they have made, and falsely maintained that they are more than $120,000.00 in arrears on their home loan.[28]  Finally, plaintiffs assert they have suffered emotional distress because defendants have allegedly claimed that plaintiffs owe them thousands of dollars in insurance charges, despite the fact that plaintiffs submitted proof they maintain their own insurance.[29]

---

[21] *Id.*

[22] *Id.*

[23] *Id.*

[24] *Id.*, ¶ 11.

[25] *Id.*

[26] *Id.*

[27] *Id.*, ¶ 13.

[28] *Id.*, ¶¶ 13, 16.

[29] *Id.*, ¶ 14.

Additionally, defendants have purportedly threatened to initiate foreclosure proceedings.[30] On January 5, 2015, they purportedly filed a notice of default and election to sell under deed of trust.[31] Plaintiffs contend that, as a result of this conduct, they have suffered severe emotional distress associated with the threatened loss of their family home, loss of equity, and damage to their credit.[32]

### B.    SLS Defendants' Request for Judicial Notice

The SLS Defendants ask that the court take judicial notice of seven documents related to plaintiffs' claims. Each of the documents was recorded in the Los Angeles County Recorder's Office and is related to the underlying deed of trust on the Property.[33]

In deciding a Rule 12(b)(6) motion, the court generally looks only to the face of the complaint and documents attached thereto. *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990). A court must normally convert a Rule 12(b)(6) motion into a Rule 56 motion for summary judgment if it "considers evidence outside the pleadings. . . . A court may, however, consider certain materials – documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice – without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003). See *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (a court may consider "other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice"); *Branch v. Tunnell*, 14

---

[30]*Id.*, ¶ 15.

[31]*Id.*

[32]*Id.*

[33]Defendants Nationstar Mortgage LLC, Specialized Loan Servicing LLC, and U.S. Bank National Association as Trustee's Request for Judicial Notice in Support of Motion to Dismiss Plaintiffs' First Amended Complaint ("RJN"), Docket No. 30 (May 4, 2015) at 2-3. The documents include: a deed of trust recorded April 3, 2006 (*id.*, Exh. 1); (2) a first-lien deed of trust recorded May 12, 2006 (*id.*, Exh. 2); (3) a deed of full reconveyance recorded June 2, 2006 (*id.*, Exh. 3); (4) a second-lien deed of trust recorded May 12, 2006 (*id.*, Exh. 4); (5) an assignment of the deed of trust recorded October 3, 2011 (*id.*, Exh. 5); (6) an assignment of the deed of trust recorded July 1, 2014 (*id.*, Exh. 6); and (8) a notice of default recorded January 9, 2015 (*id.*, Exh. 7).

F.3d 449, 453 (9th Cir. 1994) (noting that a court may consider a document whose contents are alleged in a complaint, so long as no party disputes its authenticity), overruled on other grounds by *Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

The documents the SLS Defendants seek to have the court judicially notice were recorded at various times between 2006 and 2015 by the Los Angeles County Recorder. The documents are time- and date-stamped and have a record number. Other courts have taken judicial notice of such documents as public filings. See *Velazquez v. GMAC Mortgage Corp.*, 605 F.Supp.2d 1049, 1057-58 (C.D. Cal. 2008) (taking judicial notice of documents recorded by the Los Angeles County Recorder's Office, including deeds of trust); see also *Krug v. Wells Fargo Bank, N.A.*, No. 11-CV-5190 YGR, 2012 WL 1980860, *2 (N.D. Cal. June 1, 2012) (public records can be judicially noticed under Rule 201); *Grant v. Aurora Loan Services, Inc.*, 736 F.Supp.2d 1257, 1264 (C.D. Cal. 2010) (noting that a "[party] provided a reference number for the document, showing that it was in fact recorded; this demonstrates that it is a public record"); *Fimbres v. Chapel Mortgage Corp.*, No. 09-CV-0886-IEG (POR), 2009 WL 4163332, *3 (S.D. Cal. Nov. 20, 2009) (taking judicial notice of a deed of trust, notice of default, notice of trustee's sale, assignment of deed of trust, and substitution of trustee as each was a public record); *Angulo v. Countrywide Home Loans, Inc.*, No. 1:09-CV-877-AWI-SMS, 2009 WL 3427179, *3 n. 3 (E.D. Cal. Oct. 26, 2009) ("The Deed of Trust and Notice of Default are matters of public record. As such, this court may consider these foreclosure documents"); *Distor v. U.S. Bank NA*, No. C 09-02086 SI, 2009 WL 3429700, *2 (N.D. Cal. Oct. 22, 2009) (finding that a deed of trust, notice of default and election to sell under deed of trust, and notice of trustee's sale were matters of public record and thus proper subjects of judicial notice). Accordingly, the court grants the SLS Defendants' request for judicial notice.

## II.  DISCUSSION

### A.  Plaintiffs' Failure to File Opposition

Local Rule 7-12 provides that "[t]he failure to file any required paper, or the failure to file it within the deadline, may be deemed consent to the granting or denial of the motion." CA CD L.R. 7-12. Because the motions are set for hearing on July 13, 2015, the deadline for filing opposition was June

22, 2015; plaintiffs did not oppose the motions by that date, nor have they filed opposition since then. Because plaintiffs have not filed opposition, the court could, under Rule 7-12, grant the motion on that basis alone.  See *Cortez v. Hubbard*, No. CV 07-4556 GHK (MAN), 2008 WL 2156733, *1 (C.D. Cal. May 18, 2008) ("Petitioner has not filed an [o]pposition to the [m]otion and has not requested any further extension of time to do so.  Pursuant to Local Rule 7-12, her failure to do so could be deemed consent to a grant of the [m]otion"); *Mack-University LLC v. Halstead*, No. SACV 07-393 DOC (ANx), 2007 WL 4458823, *4 n. 4 (C.D. Cal. Sept. 25, 2007) (holding, where a party "failed to oppose or in any way respond" to a motion, that "[p]ursuant to [L]ocal Rule 7-12, the [c]ourt could grant [p]laintiffs' [m]otion on this ground alone"); *Ferrin v. Bias*, No. EDCV 02-535 RT (SGLx), 2003 WL 25588274, *1 n. 1 (C.D. Cal. Jan. 2, 2003) ("Under Local Rule 7-12, failure to file an opposition may be deemed consent to the granting of the motion").  It is preferable, however, to decide cases on the merits.  The court will thus consider whether plaintiffs' claims are adequately pled.[34]

## B.     Legal Standard Governing Motions to Dismiss

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in the complaint.  A Rule 12(b)(6) dismissal is proper only where there is either a "lack of a cognizable legal theory," or "the absence of sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988).  The court must accept all factual allegations pleaded in the complaint as true, and construe them and draw all reasonable inferences from them in favor of the nonmoving party.  *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996); *Mier v. Owens*, 57 F.3d 747, 750 (9th Cir. 1995).

The court need not, however, accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations.  See *Bell Atlantic Corp. v. Twombly*, 540 U.S. 544, 553–56 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to

---

[34]As noted, the SLS Defendants and BofA filed separate motions to dismiss the first amended complaint.  As discussed *infra*, the grounds for dismissal that each motion raises are not unique to the movant, but rather relate to pleading deficiencies that apply equally to plaintiffs' claims against all defendants.  Accordingly, the court consider the motions and the arguments made therein in tandem.

relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"). Thus, a plaintiff's complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); see also *Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)" (citations omitted)); *Moss v. United States Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief," citing *Iqbal* and *Twombly*).

### C.    Whether Plaintiffs' Breach of Contract Claim Must Be Dismissed

#### 1.    Legal Standard Governing Breach of Contract Claims Under California Law

To state a breach of contract claim under California law, a party must allege (1) the existence of a contract; (2) performance under the contract or an excuse for nonperformance; (3) defendant's breach; and (4) resulting damages. *Alvarado v. Aurora Loan Services, LLC*, No. SACV 12-0524 DOC (JPRx), 2012 WL 4475330, *4 (C.D. Cal. Sept. 20, 2012) (citing *McKell v. Washington Mutual, Inc.*, 142 Cal.App.4th 1457, 1489 (2006)).

To plead the existence of a contract, a plaintiff must quote the terms of the purported contract, attach it to the complaint, or clearly allege the substance of the relevant terms. *Ramirez v. GMAC Mortg.*, No. CV 09-8189 PSG (FFMx), 2010 WL 148167, *1 (C.D. Cal. Jan. 12, 2010) ("In alleging the existence of the contract, a 'plaintiff may set forth the contract *verbatim* in the complaint or plead it, as indicated, by exhibit, or plead it according to its legal effect'" (citations omitted)); *Securimetrics, Inc. v. Harford Cas. Ins. Co.*, No. C 05-00917 CW, 2005 WL 1712008, *2 (N.D. Cal. July 21, 2005) ("The forms appended to the Federal Rules of Civil Procedure note that 'plaintiff may set forth the contract verbatim in the complaint or plead it, as indicated, by exhibit, or plead it according to its legal effect'" (citations omitted)). Pleading the existence of a contract by alleging its legal effect is "more difficult

[than pleading the precise language], for it requires a careful analysis of the instrument, comprehensiveness in statement, and avoidance of legal conclusions." *Parrish v. National Football League Players Ass'n*, 534 F.Supp.2d 1081, 1094 (N.D. Cal. 2007) (citing *McKell*, 142 Cal.App.4th at 1489; see also *Ramirez*, 2010 WL 148167 at \*2.

### 2.	Whether Plaintiffs' Breach of Contract Claim is Time-Barred

Claims for breach of a written contract are subject to a four year statute of limitations under California law.  See, e.g., *Greenberg v. Riversource Life Ins. Co.*, No. C 12-00552 WHA, 2012 WL 3257667, \*2 (N.D. Cal. Aug. 8, 2012) ("There is a four-year statute of limitations that applies to claims for breach of a written contract," citing CAL. CODE CIV. PROC. § 337); *State Compensation Insurance Fund v. WallDesign Inc.*, 199 Cal.App.4th 1525, 1529 (2011) ("The parties agree that a four-year statute of limitations applies to the Fund's claim for breach of a written contract: 'Within four years: 1. An action upon any contract, obligation, or liability founded upon an instrument in writing. . . ,'" citing CAL. CODE CIV. PROC. § 337).  "Generally, '[a] cause of action for breach of contract accrues at the time of the breach of contract, and the statute of limitations begins to run at that time regardless of whether any damage is apparent or whether the injured party is aware of his right to sue.'" *Greenberg*, 2012 WL 3257667 at \*2 (citing *Perez-Encinas v. AmerUS Life Ins. Co.*, 468 F.Supp.2d 1127, 1133-37 (N.D. Cal. 2006)).

The SLS Defendants argue that plaintiffs' breach of contract claim must be dismissed because they filed the action more than four years after May 1, 2010 – the date on which the contract claim purportedly accrued.[35]  The SLS Defendants select this date because the Agreement stated that the loan documents would automatically be modified on May 1, 2010, and thus plaintiffs knew on that date, or shortly thereafter, whether or not their loan had been permanently modified and whether defendants had breached their purported obligations under the Agreement.[36]  The Agreement provides, in relevant part:

"If [plaintiffs'] representations in Section 1 [of the Agreement] continue to be true in all

material respects and all preconditions to the modification set forth in Section 2 [of the

---

[35]SLS MTD at 5.

[36]*Id.*

Agreement] have been met, the Loan Documents will automatically become modified

on the 1st Day of May, 2010 (the 'Modification Effective Date')."[37]

The SLS Defendants argue that because paragraph 3 of the Agreement states the loan will

---

[37]See Complaint, Exh. A ("Agreement") at 2, ¶ 3.  Plaintiffs attached the Agreement to their original complaint, but did not attach it to their first amended complaint.  As a result, the SLS Defendants rely on the original complaint in arguing that the contract claim is time-barred.  (See SLS MTD at 5.)  "An amended complaint supercedes the original complaint," however, and, upon its filing, "the original pleading no longer serves any function in the case." *Acacia Corporate Management, LLC v. United States*, No. 1:07-CV-00129 AWI GSA, 2007 WL 3172945, *1 (E.D. Cal. Oct. 29, 2007) (citing *Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997); *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987)).  Thus, the SLS Defendants' reliance on an exhibit to the original complaint is improper.

The court may, however, consider the Agreement under the incorporation by reference doctrine.  As noted, in deciding a Rule 12(b)(6) motion, the court generally looks only to the face of the complaint and documents attached thereto. *Van Buskirk*, 284 F.3d at 980.  Nonetheless, "[a] court may[ ] consider certain materials – documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice – without converting the motion to dismiss into a motion for summary judgment." *Ritchie*, 342 F.3d at 907-08.

The incorporation by reference doctrine "permits a district court to consider documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleadings." *In re Silicon Graphics Inc. Securities Litigation*, 183 F.3d 970, 986 (9th Cir. 1999) (citing *Branch*, 14 F.3d at 454); see *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) ("[The Ninth Circuit] ha[s] extended the 'incorporation by reference' doctrine to situations in which the plaintiff's claim depends on the contents of the document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint," citing *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998)).  Here, there is no dispute that plaintiffs' breach of contract claim is based on a purported breach of the Agreement, and that plaintiffs' first amended complaint specifically identifies the Agreement (see FAC, ¶ 6) and references its contents. (See *id.*, ¶ 10 ("Paragraph 2B of the Modification agreement provides for no modification unless and until Plaintiffs receive an agreement signed by the lender").)

The court may therefore consider the Agreement in its entirety under the incorporation by reference doctrine, notwithstanding the fact that the Agreement was not attached to the first amended complaint.  See *Soliman v. CVS RX Services, Inc.*, 570 Fed. Appx. 710, 711 (9th Cir. Apr. 21, 2014) (Unpub. Disp.) ("The two-page contract that Soliman attached to his initial complaint states that 'this offer is for at will employment such that you or the Company may terminate your employment relationship at any time and for any reason.'  In his first amended complaint, Soliman omitted the first page of the contract.  He argues that it was therefore improper for the court to consider the first page.  This court, however, has repeatedly held that a district court 'may consider a writing referenced in a complaint but not explicitly incorporated therein if the complaint relies on the document and its authenticity is unquestioned.'  Soliman's initial complaint not only relied on the two-page contract, but actually attached it.  The district court's consideration of this document properly prevents Soliman from 'surviving a Rule 12(b)(6) motion by deliberately omitted . . . documents upon which [his] claims are based,'" citing *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007)).

"automatically become modified on [May 1, 2010]," "the statute of limitations [on] plaintiffs' [contract] claim began to run on May 1, 2010, when their loan was not modified on that date."[38]   The SLS Defendants also contend that because plaintiffs alleged they were "told shortly [after May 1, 2010] by [d]efendants' representatives that the modification had not been approved,"[39] they knew "whether their loan was (or was not) modified pursuant to the terms of the loan modification agreement" more than four years before they filed this action.[40]   The SLS defendants thus argue that plaintiffs' breach of contract claim must be dismissed as time-barred.

Plaintiffs' amended complaint is unclear in certain respects, and their failure to file opposition has deprived the court of an opportunity to have them clarify their claim.   Nonetheless, it does not appear that the breach of contract claim accrued on May 1, 2010.   While defendants contend modified terms were automatically to take effect on May 1, 2010, they misread the relevant provisions of the Agreement.   Paragraph 3, on which they rely, states that the loan documents "will automatically become modified" on May 1, 2010, if two prerequisites are satisfied – first, that plaintiffs' "representations in Section 1 continue to be true in all material respects" and second, that "all preconditions to the loan modification set forth in Section 2 have been met."[41]   Plaintiffs allege that the preconditions to loan modification set forth in Section 2 were not satisfied until March 9, 2011, when they received, for the first time, a copy of the Agreement that had been signed by defendants.   As a result, they assert, the loan was not modified until that date.[42]   Section 2 of the Agreement provides, in relevant part:

> "I understand that the Loan Documents will not be modified unless and until (I) I receive
> from the Lender a copy of this Agreement signed by the Lender, and (ii) the
> Modification Effective Date (as defined in Section 3) has occurred.   I further understand
> and agree that the Lender will not be obligated or bound to make any modification of the

---

[38]SLS MTD at 5-6.

[39]FAC, ¶ 7.

[40]SLS MTD at 5-6.

[41]Agreement, § 3.

[42]FAC, ¶ 10.

Loan Documents if I fail to meet any one of the requirements under this Agreement."[43] Because, as alleged, defendants did not execute the Agreement until February 11, 2011, it appears, under § 3, that the loan was not modified until that date.

While plaintiffs' claim might have accrued on May 1, 2010, if it had been based on defendants' failure to execute the Agreement and modify the loan by that date, plaintiffs' claim appears rather to be based on defendants' purported failure, following their execution of the Agreement on February 11, 2011, to accept plaintiffs' modified payments under the Agreement.[44] Under such circumstances, defendants' purported breach would not have occurred on May 1, 2010, but rather would have occurred when defendants first refused to accept modified payments following their execution of the Agreement. There is no dispute that plaintiffs filed the state court complaint within four years of February 11, 2011. The court therefore concludes that, as alleged, plaintiffs' breach of contract claim is not time-barred. Accordingly, the court denies the SLS Defendants' motion to dismiss plaintiffs' first cause of action on statute of limitations grounds.

### 3.     Whether Plaintiffs Have Adequately Alleged a Breach of Contract Claim

BofA argues that plaintiffs' breach of contract claim is not adequately alleged.[45] Specifically, BofA asserts that plaintiffs have failed adequately to plead the existence of a contract.[46] As noted, "[a] written contract may be pleaded either by its terms – set out verbatim in the complaint or a copy of the contract attached to the complaint and incorporated therein by reference – or by its legal effect." *Walters v. Fidelity Mortgage of California*, 730 F.Supp.2d 1185, 1199-1200 (E.D. Cal. 2010) (citing *McKell*, 142 Cal.App.4th at 1489). Although plaintiffs do not specifically plead the terms of the

---

[43]Agreement, § 2(B).

[44]See FAC, ¶ 11 ("Notwithstanding Plaintiffs' payments following the Loan Modification of February 11, 2011, Defendants and each of them failed and refused to accept their own modification and give appropriate credits to the[ ] Plaintiffs").

[45]BofA MTD at 2-4.

[46]BofA MTD at 3 ("Plaintiffs fail to meet even the basic threshold requirement for a breach of contract claim – the existence of a contract. Specifically, they fail to quote any contract, nor do they attach any contract to the FAC, and they clearly fail to allege the substance of any relevant terms. Thus, this claim must be dismissed").

1   contract, they reference the contract,[47] and the court has concluded that as a result of that reference, the

2   Agreement is incorporated in the first amended complaint.  The terms of that Agreement are undisputed,

3   and the court therefore finds it inappropriate to dismiss plaintiffs' claim on this basis.  *Walters*, 730

4   F.Supp.2d at 1199-1200.

5      BofA next argues that plaintiffs' breach of contract claim must be dismissed because plaintiffs

6   fail to describe how defendants breached the Agreement.[48]   The court agrees.  Plaintiffs allege that

7   "[d]efendants, and each of them, failed and refused to accept their own modification and give

8   appropriate credits to the[ ] [p]laintiffs" following BofA's execution of the Agreement on February 11,

9   2011.[49]   These allegations are too vague, even construed in the light most favorable to plaintiffs, to plead

10  plausibly the manner in which defendants breached the Agreement.  First, plaintiffs do not detail how

11  defendants "refused to accept their own modification."   While plaintiffs also allege that the loan

12  servicers refused payments they made "according to the terms of the modified agreement,"[50] they do not

13  plead that this was because defendants did not recognize that the Agreement was valid or for some other

14  reason.  Indeed, plaintiffs' allegations suggest that some payments at the modified amount were accepted

15  while others were not.[51]   Nor do they identify the "credits" they were supposedly denied.  Without

16  further allegations, the court cannot determine that plaintiffs have plausibly pled a breach of the loan

17  modification contract.  See, e.g., *Juntilla v. Aurora Loan Services, LLC*, No. CV 11-08201 DDP (PJWx),

18

19  _____

20      [47]FAC, ¶ 6.

21      [48]*Id.* ("Plaintiffs do not identify what party breached any contract, nor do they identify the terms
    of any agreement that were breached, and they also fail to allege when or how the unspecified defendant
22  or defendants breached any contract").

23      [49]FAC, ¶ 11 ("Following the receipt of the bank signed document, Plaintiffs had made payments
    according to the terms of the modified agreement except for payments refused by the loan servicers.
24  Notwithstanding Plaintiffs' payments following the Loan Modification of February 11, 2011,
    Defendants and each of them failed and refused to accept their own modification and give appropriate
25  credits to the[ ] Plaintiffs").

26      [50]*Id.*

27      [51]*Id.* (stating that plaintiffs made payments consistent with the terms of the modified agreement
28  "*except for* payments" that were refused).

1   2013 WL 1303820, *3 (C.D. Cal. Mar. 28, 2013) ("Plaintiff's Breach of Contract claim, pled in the

2   alternative, alleges that Defendants 'fail[ed] to apply the payments made by Plaintiff in the order of

3   priority set forth in [the Deed].'  This allegation is no more than a bare recitation of an element of a

4   breach of contract claim.  The FAC does not identify which payments were misallocated, when the

5   misallocation occurred, or how Defendant's allocation of payments was improper.  Plaintiff's breach

6   of contract claim is therefore dismissed, with leave to amend, citing *Derusseau v. Bank of America,*

7   *N.A.*, No. 11 CV 1766 MMA (JMA), 2011 WL 5975821, *8 (S.D. Cal. Nov. 29, 2011)); see also *Robert*

8   *Half International, Inc. v. Ainsworth*, No. 14-CV-2481-WQH (DHB), 2015 WL 1197882, *3 (S.D. Cal.

9   Mar. 16, 2015) ("Defendants allege that Defendants Aldava, Greenwood, and Sherman 'entered into the

10  Contract,' that each . . . 'did all or substantially all of the significant things required of her under the

11  terms of the Contract,' that '*RHI breached the Contract by failing to pay part of the commissions that*

12  *[each Defendant] earned*,' and that each Defendant was 'harmed.'  Defendants Aldava, Greenwood,

13  and Sherman's breach of contract counterclaims lack 'factual content . . . plausibly suggestive of a claim

14  entitling [Defendants] to relief. Plaintiff's motion to dismiss Defendants Aldava, Greenwood, and

15  Sherman's breach of contract counterclaim[ ] is granted" (emphasis added; internal record and case

16  citations omitted)).

17          BofA also argues that the claim must be dismissed because plaintiffs have failed to "identify

18  what party breached [the] contract."[52]  Specifically, they assert that "[p]laintiffs have improperly

19  grouped together the various [d]efendants, a violation of the basic pleading standard of Rule 8 of the

20  Federal Rules of Civil Procedure."[53]  Courts in this circuit have held that a complaint "fails to state a

21  claim" and must be dismissed if it does not "indicate which individual defendant or defendants [are]

22  responsible for which alleged wrongful act."  *In re Sagent Technology, Inc., Derivative Litigation*, 278

23  F.Supp.2d 1079, 1094 (N.D. Cal. Aug. 15, 2003) (stating that under Rule 8, "the underlying requirement

24  is that a pleading give fair notice of the claim being asserted and the grounds upon which it rests.  A

25  complaint that lumps together thirteen 'individual defendants,' where only three of the individuals was

26  _____

27          [52]BofA MTD at 3.

28          [53]*Id.*

                                                      14

alleged to have been present for the entire period of the events alleged in the complaint, fails to give 'fair notice' of the claim to those defendants"); *Aaron v. Aguirre*, No. 06-CV-1451-H POR, 2007 WL 959083, *16, n.6 (S.D. Cal. Mar. 8, 2007).

Group pleading is not *per se* impermissible, however, "so long as [it] is limited to defendants who are similarly situated." *In re American Apparel, Inc. Shareholder Derivative Litigation*, No. CV 10 06567 MMM (RCx), 2012 WL 9506072, *41 (C.D. Cal. July 31, 2012); *Slack v. International Union of Operating Engineers*, No. C-13-5001 EMC, 2014 WL 4090383, *16 (N.D. Cal. Aug. 19, 2014) ("'Collective' or 'group' pleading in a complaint is not *per se* improper and may not, in itself, always be fatal to a claim" (citations omitted)); *Howard v. Mun. Credit Union*, No. 05-CV-7488, 2008 WL 782760, *12 (S.D.N.Y. Mar. 25, 2005) ("While Rule 8 does not prohibit 'collective allegations' against multiple defendants, it does require that the allegations be sufficient to put each [d]efendant on notice of what they allegedly did or did not do.").

It does not appear that all of the defendants in this action are similarly situated in terms of their relationship to the Agreement.  As can be seen from reviewing the contract, which, as noted, is incorporated by reference in plaintiffs' first amended complaint, the parties to the Agreement are BofA (through its nominee Mortgage Electronic Registration Systems, Inc.) and plaintiffs.[54]  No mention is made of the SLS Defendants, and plaintiffs have not alleged facts indicating that the SLS Defendants are bound by the Agreement or how they could have breached it by failing to accept plaintiffs' modified mortgage payments.  As respects BofA, plaintiffs have alleged no facts indicating that their payments were made directly to BofA, that BofA directed its agents to refuse their payments, or that any other conduct by one or more defendants was done at BofA's direction.  As a result, plaintiffs' allegations are implausible as pled.  See *Corazon v. Aurora Loan Services, LLC*, No. C 11-00542 SC, 2011 WL 1740099, *4 (N.D. Cal. May 5, 2011) ("Aurora should not be required to guess which allegations pertain to it.  By failing to differentiate among defendants or specify which defendant is the subject of Plaintiff's various allegations, Plaintiff's Complaint violates Rule 8(a)(2) because it fails to provide Aurora with fair notice of its alleged misconduct" (citations omitted)).

---

[54]Agreement at 1.

1       Accordingly, the court dismisses plaintiffs' first cause of action for breach of contract.

2    **D.**      **Whether Plaintiffs' Intentional Infliction of Emotional Distress Claim Must Be**

3            **Dismissed**

4         **1.**      **Legal Standard Governing Intentional Infliction of Emotional Distress**

5            **Claims Under California Law**

6       "Under California law, a *prima facie* case of intentional infliction of emotional distress

7    [("IIED")] requires the following: (1) extreme and outrageous conduct by the defendant; (2) with the

8    intention of causing, or reckless disregard of the probability of causing emotional distress; (3) the

9    plaintiff's suffering severe or extreme emotional distress; and (4) actual and proximate causation of the

10   emotional distress by defendant's outrageous conduct." *Dove v. PNS Stores, Inc.*, 982 F.Supp.1420,

11   1424 (C.D. Cal. 1997) (citing *Sabow v. United States*, 93 F.3d 1445, 1454 (9th Cir. 1996); *Christensen*

12   *v. Superior Court*, 54 Cal.3d 868, 903 (1991)); see *Eastman v. Allstate Ins. Co.*, No. 14CV0703-WQH-

13   NLS, 2014 WL 5355036, *7 (S.D. Cal. Oct. 20, 2014) ("'The tort of intentional infliction of emotional

14   distress is comprised of three elements: (1) extreme and outrageous conduct by the defendant with the

15   intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the

16   plaintiff suffered severe or emotional distress; and (3) the plaintiff's injuries were actually and

17   proximately caused by the defendant's outrageous conduct,'" quoting *Cochran v. Cochran*, 65

18   Cal.App.4th 488, 494 (1998)).[55]  The defendant's conduct "must . . . be directed at the plaintiff or [take

19   place] in the presence of the plaintiff."  *Rhodes*, 940 F.Supp.2d at 1264 (citing *Smith v. Pust*, 19

20

21

22       [55]See also *Rhodes v. Sutter Health*, 940 F.Supp.2d 1258, 1263-64 (E.D. Cal. 2013) ("To prove a claim for IIED, a plaintiff must establish '(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct," citing *Christensen*, 54 Cal.3d at 903; *Conley v. Roman Catholic Archbishop of San Francisco*, 85 Cal.App.4th 1126, 1133 (2000)); *Mintz v. Blue Cross of California*, 172 Cal.App.4th 1594, 1607-08 (2009) ("To state a cause of action for intentional infliction of emotional distress, the plaintiff must allege (1) extreme and outrageous conduct with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct," citing *Hailey v. California Physicians' Service*, 158 Cal.App.4th 452, 473-74 (2007)).

Cal.App.4th 263, 274 (1993)).

### 2.        Whether Plaintiffs' IIED Claim is Time-Barred

The SLS defendants first argue that plaintiffs' IIED claim is time-barred.[56] "Under California law, there is a two-year statute of limitations for intentional infliction of emotional distress claims." *Soliman v. CVS RX Services, Inc.*, 570 Fed. Appx. 710, 712 (9th Cir. Apr. 21, 2014) (Unpub. Disp.) (citing CAL. CODE CIV. PROC. § 335.1); see also *Hutchins v. Bank of America, N.A.*, No. 13-cv-03242-JCS, 2013 WL 5800606, *10 (N.D. Cal. Oct. 28, 2013) ("'Causes of action for assault, battery, and intentional infliction of emotional distress are governed by the two-year statute of limitations set forth in Code of Civil Procedure section 335.1,'" quoting *Pugliese v. Superior Court*, 146 Cal.App.4th 1444, 1450 (2007)). "The statute of limitations for IIED . . . claims 'begins to run when the plaintiff suffers severe emotional distress as a result of the outrageous conduct by the defendant.'" *Cha v. Kaiser Permanente*, No. C-14-4672-EMC, 2015 WL 3758287, *10 (N.D. Cal. May 6, 2015) (citing *Soliman*, 570 Fed. Appx. at 711; *Cantu v. Resolution Trust Corp.*, 4 Cal.App.4th 857, 857 (1992)).

The SLS defendants argue that plaintiffs' IIED claim is time-barred because it was filed more than two years after the May 1, 2010, the date on which the loan modification was to become effective, i.e., the date on which "they should have known if their loan would be modified pursuant to the loan modification agreement."[57] They also contend that the complaint was filed more than two years after February 11, 2011, the date on which plaintiffs allege that the SLS defendants began "intentionally [to] inflict emotional distress upon plaintiffs."[58] As a result, the SLS defendants contend, the statute of limitations has run, and plaintiffs' IIED claim must be dismissed.[59] The SLS defendants appear to misapprehend the tortious conduct underlying plaintiffs' IIED claim.

Although they observe correctly that the complaint was filed more than two years after the May 1, 2010, plaintiffs do not reference this date in their IIED claim. Nor do they argue that they began to

---

[56]SLS MTD at 6.

[57]*Id.*

[58]*Id.*; see also FAC, ¶ 13.

[59]SLS MTD at 6.

1  suffer severe emotional distress as a result of acts occurring on or after that date.  Instead, plaintiffs

2  allege that their emotional distress is attributable to defendants' "continuous[ ] den[ial] that [their] loan

3  [had been] modified" since February 11, 2011.[60]  The first amended complaint also alleges that plaintiffs

4  suffered severe emotional distress following the parties' purported modification of plaintiffs' home loan

5  in 2011 when defendants, on various occasions, purportedly threatened to foreclose on their home.[61]

6  The SLS defendants' assertion that the limitations period commenced on May 1, 2010, therefore, is

7  unavailing.

8          The SLS defendants are correct, however, that the claim would be untimely to the extent that the

9  acts underlying it took place on February 11, 2011.  The first amended complaint does not reference a

10  specific act that forms the basis for plaintiffs' IIED claim that occurred on that date.  Instead, plaintiffs

11  allege that "*[s]ince . . . February 11, 2011,* Defendants Specialized Loan Servicing LLC and NationStar

12  Mortgage LLC [have] intentionally inflicted emotional distress upon Plaintiffs by *continuously denying*

13  *that Plaintiffs' loan was modified.*"[62]  Plaintiffs also allege that since February 2011, BofA has

14  "*continuously maintained to the present time* that plaintiffs are substantially in arrears for far more than

15  the records reflect."[63]  Finally, plaintiffs allege that all defendants have, for several years, repeatedly

16  threatened them with foreclosure.[64]

17          In situations such as this, where the allegedly tortious conduct is not a discrete incident, but

18  rather "a continuing wrong," courts generally hold that "the statute of limitations does not begin to run

19  until the date of the last injury or when the tortious acts cease."  *Blankenchip v. Citimortgage, Inc.*, Civ.

20  No. 2:14-2309 WBS AC, 2014 WL 6835688, *7 (E.D. Cal. Dec. 3, 2014) (citing *Pugliese*, 146

21  Cal.App.4th at 1452).  Because plaintiffs allege that the purportedly tortious acts committed by

22  defendants have been ongoing since February 2011, the "continuing wrong" doctrine applies to

23  _____

24          [60]FAC, ¶ 13.

25          [61]*Id.*, ¶ 15.

26          [62]*Id.*, ¶ 13 (emphasis added).

27          [63]*Id.* (emphasis added).

28          [64]*Id.*, ¶ 15.

1    determination of the limitations period.  As a result, plaintiffs' IIED claim, as pled, is not time-barred

2    and the SLS defendants' motion to dismiss on this basis must be denied. See, e.g., *Hernandez v. Attisha*,

3    No. 09–CV–2257–IEG (WMC), 2010 WL 816160, *4 (S.D. Cal. Mar. 5, 2010) ("Defendants correctly

4    state the general rule that '[i]n ordinary tort and contract actions, the statute of limitations . . . begins to

5    run upon the occurrence of the last element essential to the cause of action.'  However, as an exception

6    to the general rule, the 'continuing tort doctrine' may delay accrual of the action, if the tort involves a

7    continuing wrong, 'until the date of the last injury or when the tortious actions cease.' . . .  Plaintiff

8    alleges Defendants' conduct causing her emotional distress was 'continuous and systematic.'  Whether

9    the conduct continued up to the point of Plaintiff's rescue from Defendants' house on July 23, 2008, and

10   whether it constituted 'sufficiently connected' conduct to previous incidents of alleged infliction of

11   emotional distress are questions of fact that cannot be resolved at this stage of the proceedings.

12   Accordingly, Plaintiff states claims for which it is plausible the causes of action accrued at the time of

13   her rescue.  This is sufficient to survive the motion to dismiss" (citations omitted)).  Compare

14   *Blankenchip*, 2014 WL 6835688 at *7 ("The elements for plaintiffs' IIED claim would have thus

15   occurred in November 2011 upon the sale of their home, which is the conduct plaintiffs allege caused

16   them severe emotional distress.  Plaintiffs filed this action in August 2014, nine months after the

17   two-year statute of limitations ended.  Plaintiffs have not alleged a 'continuing wrong,' only that they

18   suffered emotional distress for an unsaid duration.  Because plaintiffs' claim does not fall into the

19   'continuing wrong' exception, their claim for intentional infliction of emotional distress is barred by the

20   statute of limitations.  Accordingly, the court will grant Citimortgage's motion to dismiss that claim").

21                    **3.    Whether Plaintiffs' IIED Claim is Adequately Pled**

22           As noted, to state an IIED claim under California law, a plaintiff must plead "(1) that the

23   defendant's conduct was outrageous, (2) that the defendant intended to cause or recklessly disregarded

24   the probability of causing emotional distress, and (3) that the plaintiff's severe emotional suffering was

25   (4) actually and proximately caused by defendant's conduct." *Austin v. Terhune*, 367 F.3d 1167, 1172

26   (9th Cir. 2004).  Both the SLS defendants and BofA argue that plaintiffs' IIED claim must be dismissed

27

28

because they fail to plead sufficient facts demonstrating that defendants' conduct was outrageous.[65] The court agrees.

To satisfy the first element of an IIED claim, a defendant's conduct must be "so extreme as to exceed all bounds of that usually tolerated in a civilized society." *Rhodes*, 940 F.Supp.2d at 1264 (citing *Schneider v. TRW, Inc.*, 938 F.2d 986, 992 (9th Cir. 1991); *Hughes v. Pair*, 46 Cal.4th 1035, 1050-51 (2009)). Stated differently, it must be "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Helgeson v. American Int'l Group, Inc.*, 44 F.Supp.2d 1091, 1095 (S.D. Cal. 1999) (quoting *Cochran*, 65 Cal.App.4th at 496); see also *Eastman*, 2014 WL 5355036 at *7 ("'Generally, conduct will be found to be actionable where the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, Outrageous!'" citing *Cochran*, 65 Cal.App.4th at 494 (citing RESTATEMENT (SECOND) OF TORTS, § 46 comment d)). Severe emotional distress means "'emotional distress of such substantial quality or enduring quality that no reasonable [person] in civilized society should be expected to endure it.'" *Young v. City of Visalia*, 687 F.Supp.2d 1155, 1168-69 (E.D. Cal. 2010) (quoting *Hughes*, 46 Cal.4th at 1051).

Plaintiffs allege that defendants "continuously den[ied] that [p]laintiffs' loan was modified," "continuously maintained . . . that plaintiffs [were] substantially in arrears" on their mortgage and insurance payments, and "threatened [p]laintiffs with foreclosure."[66] Such allegations, without more, do not plausibly plead extreme and outrageous conduct. See, e.g., *Flores v. EMC Mortgage Co.*, 997 F.Supp.2d 1088, 1125 (E.D. Cal. 2014) ("The complaint fails to allege defendants' outrageous conduct to support an IIED claim in that the complaint addresses matters . . . which plaintiffs lack standing to pursue and defendants' privileged actions. The complaint points to no conduct of defendants outside that generally accepted in loan servicing and/or foreclosure, which is inherently stressful for debtors. The complaint identifies no 'severe' emotional distress which plaintiffs allegedly suffered. The IIED

---

[65]SLS MTD at 7; BofA MTD at 4-5.

[66]FAC, ¶¶ 13-15.

1   claim fails on its merits [so as] to warrant its dismissal with prejudice, especially given plaintiffs' failure

2   provide meaningful support for the claim"); *Lesley v. Ocwen Financial Corp.*, No. SACV 12-1737-DOC

3   (JPRx), 2013 WL 990668, *11 (C.D. Cal. Mar. 13, 2013) (dismissing plaintiffs' IIED claim after

4   concluding that "a simple mortgage modification denial, without more, [cannot] constitute outrageous

5   conduct," citing *Coleman v. Republic Indemnity Insurance Co.*, 132 Cal.App.4th 403, 417 (2005));

6   *Chang v. Wachovia Mortgage, FSB*, No. C-11-1951 SC, 2011 WL 5552899, *7 (N.D. Cal. Nov. 15,

7   2011) ("Plaintiff has not alleged conduct 'so extreme as to exceed all bounds of that usually tolerated

8   in a civilized society.' Plaintiff has merely pled that, on multiple occasions, Defendants communicated

9   the possibility of a loan modification or other loss mitigation options. The fact that Defendants

10  ultimately found Plaintiff ineligible for a modification and exercised their legal right to sell the property

11  does not render this conduct outrageous. Accordingly, Plaintiff's fifth claim for IIED is DISMISSED

12  WITHOUT LEAVE TO AMEND" (citations omitted)). Because plaintiffs do not allege facts plausibly

13  suggesting that defendants' actions were extreme or outrageous, their IIED cause of action must be

14  dismissed.[67]

15      Plaintiffs' IIED claim must be dismissed for the additional reason that plaintiffs fail to plead any

16  facts demonstrating that they experienced "severe emotional distress." "Severe emotional distress

17  means emotional distress of such substantial quality or enduring quality that no reasonable [person] in

18  civilized society should be expected to endure it." *Hughes*, 46 Cal.4th at 1051 (holding that

19  "discomfort, worry, anxiety, upset stomach, concern, and agitation" do not rise to this level). Plaintiffs

20  allege no *facts* that satisfy this demanding standard; they simply assert, in conclusory fashion, that

21  defendants caused them "severe emotional distress."[68] This does not suffice to plead severe emotional

22  distress; as the Supreme Court has noted, "a formulaic recitation of the elements of a cause of action will

23  not" suffice to survive a motion to dismiss. *Iqbal*, 556 U.S. at 678. See, e.g., *Lopez v. County of Los*

24

---

25      [67]Although, in the context of a loan modification and dealings with a lender, "[a] plaintiff may
    successfully allege outrageous conduct when the defendant knew plaintiff was especially vulnerable and
26  used its position of power to cause the plaintiff's emotional distress," *Lesley*, 2013 WL 990668 at *11,
    plaintiffs do not allege any facts suggesting particular vulnerability in the first amended complaint.
27

28      [68]FAC, ¶ 15.

1  *Angeles*, No. CV 15-01745 MMM (MANx), 2015 WL 3913263, *11 (C.D. Cal. June 25, 2015)

2  ("Plaintiffs allege no facts that satisfy this demanding standard; they simply assert, again in conclusory

3  fashion, that they have and will continue to suffer emotional distress as a result of defendants' conduct.

4  This is insufficient to plead severe emotional distress" (citations omitted)); *Landucci v. State Farm Ins.*

5  *Co.*, __ F.Supp.3d __, 2014 WL 3962845, *9 (N.D. Cal. Aug.14, 2014) ("Here, Plaintiff fails to allege

6  any form of emotional distress beyond [a] conclusory allegation. . . .  Accordingly, Plaintiff has failed

7  to plead sufficient facts to satisfy the 'severe or extreme emotional distress' prong"); *Schultz v.*

8  *Stericlyce, Inc.*, No. CV F 13–1244 LJO MJS, 2013 WL 4776517, *8 (E.D. Cal. Sept.4, 2013) (finding

9  that allegations of "pain and suffering, extreme and severe mental anguish, and emotional distress with

10  no fact[s] to support such symptoms or conditions" failed adequately to plead "severe emotional

11  distress" prong); *Ratachie v. AmeriCredit Fin. Servs., Inc.*, No. CV 11–01351 PHX PGR, 2012 WL

12  4951218, *3 (D. Ariz. Oct.17, 2012) ("While the IIED claim in the SAC alleges that the plaintiff

13  'suffered severe and debilitating emotional distress, humiliation, and degradation' as a result of the

14  defendant's actions, there are no supporting factual enhancements regarding emotional distress that are

15  sufficient to nudge the plaintiff's claim 'across the line from conceivable to plausible' as is required").

16  For this additional reason, therefore, plaintiffs fail plausibly to allege an IIED claim, and their second

17  cause of action must be dismissed.[69]

18         **E.**    **Whether Plaintiffs' Request for Punitive Damages Should Be Dismissed**

19         BofA last moves to dismiss plaintiffs' prayer for punitive damages.[70]  As the court has dismissed

20  plaintiffs' IIED claim against all defendants, there is no basis for an award of punitive damages.[71]  See,

21  _____

22       [69]Because plaintiffs' IIED claim fails to state a claim on which relief can be granted, the court
declines to address BofA's argument that the claim should be dismissed because plaintiffs improperly

23  attempt to "transmute" a contract cause of action into a tort claim.  (See BofA MTD at 5-6.)

24       [70]BofA MTD at 6-7 ("Punitive damages may not be awarded for breach of contract, even where
a defendant's conduct in breaching the contract was willful, fraudulent, or malicious").

25

26       [71]The IIED claim is the only one that would support an award of punitive damages.  Under
California law, "[p]unitive damages are not recoverable for breach of contract claims even if the

27  defendant's conduct was 'willful, fraudulent, or malicious.'  *Flores v. Wells Fargo Bank, N.A.*, No. C
11-6619 JSC, 2012 WL 2427227, *9 (N.D. Cal. June 26, 2012) (citations omitted); see also *Boles v.*

28  *Merscorp, Inc.*, No. CV 08-1989 PSG (Ex), 2008 WL 5246038, *4 (C.D. Cal. Dec. 12, 2008) ("Punitive

1  e.g., *Davis v. City of San Jose*, No. 14-cv-02035-BLF, 2014 WL 2859189, *9 (N.D. Cal. June 20, 2014)

2  ("[B]ecause the Court has dismissed all of Plaintiff's substantive claims against the Officers with leave

3  to amend, the Court will also Grant the Officers' motion to dismiss Plaintiff's punitive damages demand

4  with leave to amend"); *Flores*, 2012 WL 2427227 at 9 ("The Breach of Contract claim is the only claim

5  that thus far survives; accordingly, the prayer for punitive damages fails. . . .  Defendants' Motion to

6  Strike the prayer for punitive damages is GRANTED with leave to amend"); *Cooper v. Cate*, No. 2011

7  WL 5554321, *13 (E.D. Cal. Nov. 15, 2011) ("Finally, dismissal without prejudice of the SAC's prayer

8  for punitive damages is appropriate because there are no viable causes of action in the SAC that provide

9  for punitive damages").

10

11  ### III.  CONCLUSION

12      For the reasons stated, the court grants defendants' motions to dismiss plaintiffs' first amended

13  complaint.  Dismissal is with leave to amend.  See *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051 (9th

14  Cir. 2008) ("Dismissal without leave to amend is proper if it is clear that the complaint could not be

15  saved by amendment"); *California ex rel. California Department of Toxic Substances Control v. Neville*

16  *Chemical Co.*, 358 F.3d 661, 673 (9th Cir. 2004) ("[D]enial of leave to amend is appropriate if the

17  amendment would be futile," citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  Plaintiffs may file an

18  amended complaint within twenty (20) days of the date of this order if they are able to remedy the

19  deficiencies the court has noted.

20      Plaintiffs may not plead new claims.  Should the scope of any amendment exceed the scope of

21  leave to amend granted by this order, the court will strike the offending portions of the pleading under

22  Rule 12(f).  See FED.R.CIV.PROC. 12(f) ("The court may strike from a pleading an insufficient defense

23

24  ─────────────────────

25  damages are not recoverable for breach of contract claims even if the defendant's conduct was 'willful,
fraudulent, or malicious,'" citing *Myers Building Indus., Ltd. v. Interface Tech., Inc.*, 13 Cal.App.4th

26  949, 949 (1993)); *Crogan v. Metz*, 47 Cal.2d 398, 405 (1956) ("[A]n award [of punitive damages] may
not be granted in an action based on a breach of contract, even though the defendant's breach was willful

27  or fraudulent," citing CAL. CIV. CODE § 3294; *Brewer v. Second Baptist Church of Los Angeles*, 32
Cal.2d 791, 801 (1948); *Chelini v. Nieri*, 32 Cal.2d 480, 486-87 (1948); *Mother Cobb's Chicken T., Inc.*

28  *v. Fox*, 10 Cal.2d 203, 205 (1937)).

or any redundant, immaterial, impertinent, or scandalous matter.  The court may act: (1) on its own; or (2) on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading"); see also *Barker v. Avila*, No. 09-CV-00001-GEB-JFM, 2010 WL 3171067, *1-2 (E.D. Cal. Aug. 11, 2010) (striking an amendment to federal law claim where the court had granted leave to amend only state law claims).[72]

DATED: July 8, 2015

_____
MARGARET M. MORROW
UNITED STATES DISTRICT JUDGE

---

[72]Because defendants are similarly situated, they are directed to jointly file any future motion.