JOEL M. WARD (SBN. 49156)
Email: jwardenterprises@hotmail.com
1740 W Temple St.
Los Angeles, CA 90026
Telephone: 310-678-6780

Attorney For Plaintiffs
MARK BASSAM and EVANGELINE BASSAM

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| MARK BASSAM ;<br>EVANGELINE BASSAM<br><br>           Plaintiffs,<br><br>vs.<br><br>BANK OF AMERICA, BAC HOME LOANS SERVICING LP, SPECIALIZED LOAN SERVICING LLC, NATIONSTAR MORTAGE LLC, U.S. NATIONAL BANK ASSN., Does 1 to 20<br>           Defendants. | Case No.: 2:15-cv-00587-MMM-FFM<br><br>Assigned to Hon. Margaret M. Morrow, Courtroom 780<br><br>**PLAINTIFFS SECOND AMENDED COMPLAINT**<br><br>1. BREACH OF CONTRACT<br>2. GENERAL NEGLIGENCE<br>3. NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS<br><br>DATE FILED: DECEMBER 3, 2014<br>TRIAL DATE: FEBRUARY 16, 2016 |

Plaintiffs complain and allege as follows,

## GENERAL ALLEGATIONS

1.     At all relevant times mentioned in this Complaint, Plaintiffs Mark Bassam and Evangeline Bassam are and were residents of Los Angeles County, California, and the owners of the real property that is subject of this complaint and is situated in the city of El Monte, County of Los Angeles, commonly known as 3615 Ponderosa St., El Monte CA 91732.

2.    Plaintiffs are informed and believe and thereon allege, that at all relevant times mentioned in this complaint, Defendants were organized and operating within the State of California as corporations or other business organizations in capacities to be determined.

3.    Plaintiffs are informed and believe an thereon allege, that from time to time Defendants Bank of America (BofA) and US National Bank ASSN., (USNB) were and/or are the owners of the Bassam loan (s) referred to in this action.

4.    Plaintiffs are further informed and believe and thereon allege, that at various times, Defendants BAC Home Loans Servicing LP (BAC), Specialized Loan Servicing (SLS), and Nationstar Mortgage, LLC, (NATIONSTAR), at the direction of the owner(s) of the Bassam loan, attempted to service said loan.

5.    The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants named fictitiously as Does 1-20, inclusive, are unknown to Plaintiffs. Plaintiffs are informed and believe and therefore allege, that each of the fictitiously named Defendants is in some way liable to Plaintiffs and Plaintiffs therefore sue these Defendants by such fictitious names. Plaintiffs will amend this Complaint to show the true or correct names and capacities of these fictitiously named Defendants when the same have been ascertained. Each of the allegations herein, and each reference to a named Defendant included a reference to the Doe Defendants.

6.    Plaintiffs are informed and believe and thereon allege, that Defendants and each of them, were the agents, employees, partners, co-venturers, and/or representatives of each other doing the things alleged herein and in so doing were acting within the scope of their respective authority and agency and in such capacity are jointly and severally liable to Plaintiffs.

**FOR A FIRST CAUSE OF ACTION FOR BREACH OF CONTRACT AGAINST DEFENDANTS BANK OF AMERICA AND BAC HOME LOANS SERVICING LP, PLAINTIFFS ALLEGE:**

7.  Plaintiffs repeat and re-allege and incorporate by reference the allegations set forth in paragraph 1-6 inclusive.

8.  Early in 2009, Plaintiffs applied for a modification of their home loan then being owned and/or serviced by Defendants Bank of America and BAC Home Loans Servicing LP. Plaintiffs were placed on a reduced trial plan while their application for a modification was being processed. On or about July 11, 2009, Plaintiffs received a document from Defendants entitled "Home Affordable Modification Trial Period Plan". This was further represented as "Step One of Two – Step Documentation Process". With this trial period plan having an effective date of July 11, 2009, Plaintiffs were asked to review, make any corrections, sign, and return the document within a week. Plaintiffs signed the document on July 8, 2009 and otherwise fully complied with said instructions.

9.  Thereafter, on or about May 11, 2010, Plaintiffs received another document entitled "Home Affordable Modification Agreement", which now represented "Step Two of the Two Step Documentation Process". Further instructions stated that the Plaintiffs should review that document, and refer any corrections or questions to a specified telephone number. They were to sign and return the documents within one week after they were received. The documents further indicated a "Modification Effective Date" of May 1, 2010, which was a date prior to the date the documents where even sent to the Plaintiffs. Plaintiffs signed, accepted and returned that document on May 16, 2010, thereby then believing that their Loan Modification was now fully in effect.

10. Plaintiffs commenced making their loan payments in accordance with the new terms of what they believed was a modified loan, only to be told shortly thereafter by Defendant's representatives, without further explanation, that the modification had not been approved. Further, that they would have to make their payments according to the original loan terms or face foreclosure.

11. For a period of almost one year, Plaintiffs frantically attempted to get clarification as to whether their loan modification had been approved and if not, why not. With each contact they were given a variety of reasons as to why their modification had not been approved. Furthermore, on a few occasions, Defendants' representatives would state that "something was definitely wrong" and there is need to refer the matter to the "escalation department" or, they would refer the matter to a higher level of management with a callback to inform Plaintiffs as to what took place.

12. Plaintiffs were repeatedly informed by Defendants' various representatives that a) they had not met the criteria necessary to be approved for a loan modification, or b) because they had filed for bankruptcy, they were disqualified from the program, or c) with reference to their bankruptcy, loan modification applicants could not be in two programs at the same time and that caused their application and/or approval to be void. When Plaintiffs attempted to contact someone at the telephone number previously specified, the line was always answered by a machine with Plaintiffs requesting a return call several times. No return call was made or received.

13. Without the ability to make their original loan payments, Plaintiffs were convinced that they were about to lose their home. The fear caused by all of this caused Plaintiffs to take appropriate steps in preparation of foreclosure and eviction from their home, by causing them to expend funds to renovate an old travel trailer as a interim living quarters in preparation for the worst.

14. The very first and only written indication that Plaintiffs' loan <u>was modified</u> was when the same Modification Agreement that Plaintiffs signed 10 months earlier arrived at their home on March 9, 2011. However, the document was now bearing Defendant's signature and was dated February 11, 2011, some 9 months after Plaintiffs returned the same documents to Defendants. This same document arrived after Plaintiffs were told by Defendant's representatives for the previous 9 months that Plaintiffs had not been approved for a Loan Modification. It was only then when Plaintiffs realized that there was no signed Loan Modification Agreement in effect until March 9, 2011, which was the date Plaintiffs received a signed copy. Plaintiffs had believed that Defendant's representative had signed the Home Affordable Modification Agreement when it was originally returned in May of 2010, not realizing that it was not signed by Defendant's agent nor became effective until March 9, 2011. Said Agreement provided in part that it would not take effect unless certain preconditions had been satisfied, one of which requiring that there would be no modification unless and until Plaintiffs received a copy signed by the lender, which would be March 9, 2011. Section 2b of the Modification Agreement further provides that Plaintiffs loan will not be modified unless and until Plaintiffs receive a copy of the Agreement signed by the lender, which occurred on March 9, 2011.

15. Following receipt of the signed document, Plaintiffs had made payments according to the terms of the modified Agreement except for payments refused by the loan servicers. Notwithstanding the payments and acceptance following the Loan Modification of March 9, 2011, Defendants and each of them breached their own Agreement by failing and refusing to accept the terms of their modification and give appropriate credits to Plaintiffs. Plaintiffs have performed all obligations to Defendants except those obligations they were prevented or excused from performing. Plaintiffs have been damaged in a sum to be determined at trial.

**FOR A SECOND CAUSE OF ACTION FOR GENERAL NEGLIGENCE AGAINST ALL DEFENDANTS EXCEPT US NATIONAL BANK ASSN., PLAINTIFFS ALLEGE:**

16.     Plaintiffs repeat and re-allege and incorporate by reference the allegations set forth in paragraphs 1-15 inclusive.

17.     On February 11, 2011, Plaintiffs and Defendants Bank of America and BAC Home Loan Servicing entered into a Home Affordable Loan Agreement, with an effective date of March 9, 2011. Plaintiffs are informed and believe that said Defendants appointed Defendants SLS and NATIONSTAR to service the Bassam loan from time to time, commencing in early 2013, to the current time. Plaintiffs are further informed and believe that those Defendants specialized in loan servicing activities and were appointed to supervise or otherwise participate in loan servicing activities on behalf of Bank of America and BAC Home Loan Servicing. Plaintiffs are further informed and believe that said Defendants, as owners of Plaintiffs loan from time to time, exercised minimal if any supervision over the loan servicer's activities and through their negligence, failed to properly asses those activities, therefore causing Plaintiffs damages according to proof.

18.     Plaintiffs further maintain that the Defendants' loan servicers, as agents of the loan owners, were grossly negligent in failing to respond to Plaintiffs and their counsel and thereby failed to determine Plaintiffs rightful modification terms and the amount correctly owing from time to time.

19.     Said servicers have also overcharged Plaintiffs for insurance even when they were provided with evidence of payment of insurance. Plaintiffs are informed and believe and thereon allege that these overcharges amount to a sum to be determined at trial.

**FOR A THIRD CAUSE OF ACTION FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS AGAINST ALL DEFENDANTS EXCEPT US NATIONAL BANK ASSN., PLAINTIFFS ALLEGE:**

20. Plaintiffs repeat and re-allege and incorporate by reference the allegations set forth in paragraphs 1-19 inclusive.

21. Said Defendants and each of them have negligently inflicted emotional distress upon Plaintiffs by continuously denying that Plaintiffs loan was effectively modified as previously stated. As a result, Defendants have continuously maintained that Plaintiffs are substantially in arrears for far more than the records reflect. For example, at one point during 2014, it was alleged that Plaintiffs were in arrears for approximately $40,000 and two months later, it was $117,000. Plaintiffs and their counsel have, for a period of almost two years, argued and disagreed with Defendants who have ignored and never effectively paid attention nor responded to Plaintiffs and their attorney despite hours and hours of numerous communications.

22. Defendants and each of them also continue to maintain that Plaintiffs owe them thousands of dollars for fraudulent insurance charges even after Plaintiffs have demonstrated otherwise. Furthermore, Defendants continue to rotate servicers who, while denying Plaintiffs' position, further argue that they cannot be responsible for their predecessors' conduct. Shortly after this complaint was filed, Defendant NATIONSTAR filed a Notice of Default and threatened Plaintiffs with foreclosure which is causing Plaintiffs severe emotional distress. Plaintiffs are informed and believe and thereon allege that said Notice of Default was withdrawn by Defendant's counsel. Even today, plaintiffs continue to suffer substantial emotional distress due to the threat of the loss of family home and equity and loss of credit status. Furthermore, if evicted, plaintiffs understand that they probably will never qualify for the purchase of other property with an eviction on their record.

23. Plaintiffs are informed and believe and thereon allege, that have made the necessary legal payments required of them and further acknowledge that while they owe nominal funds to Defendants, it is nowhere near the amounts demanded by Defendants. Defendants and each of them refuse to acknowledge certain of Plaintiffs payments and credits nor will they take the time to attempt to resolve it, thereby requiring Plaintiffs to take this most unfortunate action.

24. Wherefore, Plaintiffs pray for general damages according to proof to be awarded to them on all causes of action following the trial of this matter. Plaintiffs further pray for their costs and other relief as may be just.

Dated this __28__ day of July, 2015

_____
Joel M. Ward
Attorney for Plaintiffs.

# PROOF OF SERVICE

I am employed in the City and County of Los Angeles, California. I am over the age of 18 and not a party to the within action. My business address is 1740 W. Temple, Los Angeles, CA 90026.

On **July 28, 2015**, I served the following document:

**PLAINTIFFS SECOND AMENDED COMPLAINT**

On the interested parties in this action by sending true copies electronically via the CM/ECF ELECTRONIC FILING addressed as follows:

Adam F. Summerfield, Esq.
MCGUIREWOODS LLP
1800 Century Park E. 8Th Fl.
Los Angeles, CA 90067

Robert R. Yap, Esq
AKERMAN LLP
725 South Figueroa St., 38th Fl.
Los Angeles, CA 90017

☒    ( CM/ECF ELECTRONIC FILING) I caused the above document(s) to be transmitted to the office(s) of the addressee(s) listed above by electronic mail at the e-mail address(es) set forth above pursuant to Fed.R.Civ.P.5(d)(1). "A Notice of Electronic Filing (NEF) is generated automatically by the ECF system upon completion of an electronic filing. The NEF shall be attached to any document served in the traditional manner upon any party appearing pro se."

☒    I declare under penalty of perjury that I am employed in the office of a member of the bar of this Court at whose direction this service was made and that the foregoing is true and correct.

(FEDERAL) I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service was made. I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 28, 2015, at Los Angeles, California.

Sendy Ortiz
_____
Printed name

_____
Signature